IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE RENA MCCREA,   *

    Plaintiff,   *

    v.   *   Civil Action No. RDB-18-2490

WELLS FARGO, *et al.*,   *

    Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This case arises from a foreclosure action resulting in the public sale of a home belonging to Plaintiff Nicole Rena McCrea ("Plaintiff" or "McCrea"). Plaintiff, proceeding *pro se*, asserts numerous state and federal claims against three groups of defendants: Wells Fargo Bank, N.A. ("Wells Fargo");[1] Mark S. Devan, Thomas P. Dore, Brian S. McNair, and Angela Nasuta (collectively, the "Substitute Trustees"); and DSDJ Properties and Daniel Wilson ("Wilson"). Now pending are Wells Fargo's Motion to Dismiss the Complaint (ECF No. 8); DSDJ Properties and Daniel Wilson's Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim (ECF No. 12); the Substitute Trustees' Motion to Dismiss (ECF No. 20); and a second Motion to Dismiss filed by the Substitute Trustees' (ECF No. 33).

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, Wells Fargo's Motion to Dismiss the Complaint (ECF No. 8) is GRANTED; DSDJ Properties and Daniel Wilson's Motion to

---

[1] Plaintiff names "Wells Fargo" as a Defendant in her Complaint. Wells Fargo's Motion to Dismiss is filed on behalf of "Wells Fargo Bank, N.A."

1

Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim (ECF No. 12) is GRANTED; and the Substitute Trustees' Motions to Dismiss (ECF Nos. 20, 33) are GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. V. Nat' Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). As McCrea is proceeding *pro se*, this Court has "liberally construed" her Complaint and held it to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 F. App'x 141, 2017 WL 4415771 (4th Cir. Oct. 5, 2017). This Court has also considered an Opinion of the Maryland Court of Special Appeals, *McCrea v. Devan, et al.*, No. 1320, 2019 WL 1200732, at *2 n.2 (Md. Ct. Spec. App. March 13, 2019), and other matters of public record relevant to this action. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (taking judicial notice of matters of public record in considering motion to dismiss); *Cohen v. INS Consultants, Inc.*, WDQ-14-0768, 2015 WL 847473, at *1 n.1 (D. Md. Feb. 25, 2015) (drawing facts of the case from Delaware state court opinions).

**I. McCrea Receives Assistance under the Home Affordable Modification Program ("HAMP") and Defaults on Her Modified Loan.**

On June 27, 2003 McCrea purchased the property at 12472 Turtle Dove Place, Waldorf, Maryland. (Wells Fargo Ex. 1,[2] ECF No. 8-4.) On or about March 7, 2007 McCrea

---

[2] For ease of reference, this Court refers to the Exhibits attached to the Defendants' Motions to Dismiss by noting the party name and the exhibit number.

2

refinanced her mortgage loan with World Savings Bank, F.S.B. ("World Savings")[3] and executed a promissory note in the amount of $219,000 and a deed of trust pledging the property as collateral. (Wells Fargo Exs. 2, 3, ECF Nos. 8-5, 8-6.)

In 2010, McCrea began to experience financial difficulties and obtained relief from Wells Fargo under the Home Affordable Modification Program ("HAMP"), a mortgage assistance program established by the Treasury Department under the Troubled Asset Relief Program ("TARP"). *See Allen v. CitiMortgage, Inc.*, CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011) (explaining the history of the program). The program expired on December 31, 2016. U.S. Dep't of the Treasury, Home Affordable Modification Program Supplemental Directive 18-01 (Dec. 18, 2018). Under HAMP, home loan servicers received financial incentives for modifying the mortgages of individuals in financial distress in accordance with uniform loan modification procedures. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 773-74 (4th Cir. 2013) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012)). As this Court has previously noted, HAMP modifications proceeded in two steps:

> First, the mortgage servicer determines whether the borrower is eligible to participate in HAMP. If a mortgage servicer determines that the borrower is eligible for HAMP, the servicer may offer the borrower a three-month Trial Period Plan ("TPP"), during which the borrower pays reduced mortgage payments. If all of the conditions of the TPP Agreement are satisfied, the borrower may then proceed to step two of the process, at which point he or she is offered a permanent loan modification.

*Letke v. Wells Fargo Home Mortg., Inc.*, RDB-12-3799, 2015 WL 1438196, at *5 (D. Md. March 27, 2015) (quoting *Allen*, 2011 WL 3425665, at *8). During the relevant period, HAMP

---

[3] World Savings is a predecessor-in-interest to Wells Fargo. In October 2006, Wachovia Corporation acquired World Savings. In 2008, Wells Fargo acquired Wachovia, including World Savings. *See McCrea v. Devan, et al.*, No. 1320, 2019 WL 1200732, at *2 n.2 (Md. Ct. Spec. App. March 13, 2019).

3

included two evaluation Tiers, referred to as Tier 1 and Tier 2. Under Tier 1, a loan servicer followed a series of steps, called the "Tier 1 Standard Modification Waterfall" to reach a target monthly mortgage payment to income ratio of 31%. MHA Handbook v. 5.3, at 115. In general, borrowers who had previously obtained a HAMP Tier 1 modification were not eligible to receive additional Tier 1 modifications, but could obtain modifications under Tier 2. *Id.* at 71, 77. Applying another "standard modification waterfall," Tier 2 modifications were required to achieve a 10% or greater reduction in monthly mortgage payments; otherwise, the borrower was not eligible under Tier 2. *Id.* at 111.

In this case, McCrea began making payments under a TPP to Wachovia Mortgage, a division of Wells Fargo, in August 2010. (Compl. ¶ 14.) In November 2010, she and Wachovia finalized a permanent Tier 1 loan modification. (*Id.* at ¶ 15.) In the following years, McCrea's financial condition worsened as her health deteriorated, causing her to default on her HAMP loan modification. On May 30, 2014 her employer placed her on sick leave without pay after she exhausted her paid sick leave. (*Id.* at ¶ 16.) She admits that she made her last full mortgage payment to Wells Fargo that month. (*Id.* at ¶ 17.) Accordingly, McCrea defaulted on the modified loan as of June 2, 2014.

## II. Wells Fargo Denies McCrea Additional HAMP Loan Modifications.

McCrea's Complaint chronicles her unsuccessful attempts to obtain additional assistance under HAMP between May 2014 and 2017. She claims that in June 2014 her request for loan forbearance was denied, that Wells Fargo denied her "loss mitigation assistance through HAMP," and that Wells Fargo did not give her any options besides selling her home. (*Id.* at ¶ 18.) McCrea made similar requests throughout the relevant period, but complains that

4

Wells Fargo denied her requests for HAMP-related assistance on the grounds that she had failed to provide adequate information. She alleges that between July 2015 and December 2015, Wells Fargo sent her "various unwarranted addendums asking [her] to articulate and/or clarify one or two random and trivial items in her modification application." (*Id.* at ¶ 24.) McCrea alleges that she complained about Wells Fargo's methods on numerous occasions. (*Id.* at ¶ 26.)

Foreclosure proceedings began in May 2016. On May 23, 2016, Wells Fargo sent a Notice of Intent to Foreclose to McCrea and appointed the Substitute Trustees. (*Id.* at ¶ 27.) On October 19, 2016[4] the Substitute Trustees initiated a foreclosure action in the Circuit Court for Charles County styled *Devan, et al v. McCrea*, case number 08-C-16-002735. (*Id.* at ¶ 28; Wells Fargo Ex. 5, ECF No. 8-8.) While foreclosure proceedings were pending, Wells Fargo continued to deny McCrea's requests for HAMP assistance. On December 27, 2016 Wells Fargo submitted a letter to McCrea informing that she was ineligible for a HAMP Tier 1 modification because she had already obtained such modification and that she was ineligible for a HAMP Tier 2 modification because the modified monthly payment would exceed 42% of her monthly income. (*Id.* at ¶¶ 33-34.) McCrea alleges that Wells Fargo's denial letter made unspecified fraudulent misrepresentations. (*Id.* at ¶ 34.) In early January 2017, McCrea filed an appeal with Wells Fargo challenging the determination that she was not eligible for another HAMP modification, arguing that the bank had engaged in fraud. (*Id.* at ¶¶ 35-36.) Wells Fargo rejected her appeal. (*Id.* at ¶ 36, 42, 43.)

---

[4] The Complaint incorrectly states that the foreclosure action was filed in 2017.

McCrea acknowledges that she rejected Wells Fargo's efforts to offer her additional assistance outside of HAMP. On January 17, 2017 Wells Fargo notified McCrea that she was eligible for a proprietary loan modification. (*Id.* at ¶ 37.) Reluctantly, McCrea agreed to a Trial Payment Plan as a prerequisite to obtaining the modification. (*Id.* at ¶¶ 39-40.) From February 2017 to June 2017 she made timely, monthly payments under the plan. (*Id.* at ¶ 48.) On April 17, 2017 Wells Fargo provided McCrea with instructions for finalizing the loan modification. (*Id.* at ¶ 49.) The instructions required her to sign a loan modification agreement by May 2, 2017, or else Wells Fargo would be "unable to complete the modification" and could resume collection communications and legal proceedings. (*Id.*) On the May 2, 2017 deadline, McCrea informed Wells Fargo that she would be seeking an "independent review" of the proposed Loan Modification Agreement. (*Id.* at ¶ 51.) Wells Fargo allegedly agreed to continue to accept the TPP payments during the independent review. (*Id.*) The next day, McCrea filed a complaint with the United States Department of Housing and Urban Development ("HUD") and the Consumer Financial Protection Bureau ("CFPB") accusing Wells Fargo of committing fraud by, *inter alia*, refusing her requests for a HAMP modification. (*Id.* at ¶ 52.)

McCrea accuses Wells Fargo of retaliating against her for filing complaints with HUD and the CFPB. She alleges that, from May 3, 2017 to June 20, 2017, Wells Fargo representatives contacted her "at least three times a week and often twice a day" demanding her signature on the April 17, 2017 modification agreement. (*Id.* at ¶ 54.) In response to these calls, McCrea told Wells Fargo that their actions constituted harassment and accused the bank of attempting to stifle her efforts to obtain "federal review" of its actions. (*Id.*) On June 20, 2017, in response to McCrea's CFPB action, Wells Fargo once again explained that McCrea

was not eligible for another HAMP Tier 1 modification because she had previously been approved for a Tier 1 modification in 2010, and that she was ineligible for a Tier 2 modification because it was unable to achieve a 10% reduction in her monthly mortgage payments. (*Id.* at ¶ 57.) On July 3, 2017, a Wells Fargo representative informed McCrea that the bank would no longer be accepting payments under the Trial Period Plan ("TPP") because she had failed to sign the April 17, 2017 final Loan Modification Agreement. (*Id.* at ¶ 60.) In response, McCrea accused Wells Fargo of retaliating against her for filing a complaint with the CFPB and charged the bank with attempting to "nullify/make moot a U.S. agency's federal review of their final agreement." (*Id.*)

The foreclosure action resumed in the summer of 2017. In July 2017, the Substitute Trustees filed a bond with the Circuit Court for Charles County, Maryland and the foreclosure sale was scheduled for August 11, 2017. (*Id.* at ¶¶ 61-62.) On August 9, 2017, McCrea, proceeding *pro se*, filed an Emergency Motion to Stay and Dismiss Foreclosure Sale, raising substantially the same matters presented in this case. (Substitute Trustees Ex. 2, ECF No. 33-3.) On August 11, 2017, the Circuit Court denied her motion and McCrea's home was sold at auction. (Wells Fargo Ex. 1, at 5-6; Compl. at ¶ 70.) McCrea alleges that from August 2017 to September 2017, Defendants changed the locks to her home and "systematically removed" her personal belongings. (*Id.* at ¶ 71.)

### III. Subsequent Legal Challenges.

McCrea has unsuccessfully challenged the sale of her home by filing numerous motions and appeals in state court. On September 8, 2017 she filed a "Motion to Vacate the August 11, 2017 Judgment" and a "Motion to Stay Enforcement of the August 11, 2017 Judgment,"

7

accusing "Wells Fargo and/or the Substitute Trustees" of committing various bad acts, including making fraudulent statements in the course of denying her relief under HAMP and advancing foreclosure proceedings. (*Id.* at ¶ 73.) On that same day, she also noted an appeal to the Maryland Court of Special Appeals. (*Id.* at ¶ 75.) While those motions were pending, McCrea filed motions to alter and amend the Circuit Court's ruling. (*Id.* at ¶ 81.) All of these motions were eventually denied. On October 10, 2017 the Circuit Court docketed a Final Order of Ratification. (*Id.* at ¶ 83.) On November 9, 2017, McCrea filed a Motion to Revise the Order of Ratification and a Notice of Appeal to the Court of Special Appeals, which was subsequently denied. (*Id.* at ¶ 88.)

McCrea appealed the Circuit Court's rulings at every turn. All told, McCrea filed five notices of appeal, prompting the Maryland Court of Special Appeals to open two cases: Docket Nos. CSA-REG-1320-2017 and CSA-REG-2142-2017. On September 14, 2018, the Court of Special Appeals dismissed McCrea's appeal in case number CSA-REG-2142-2017 for failure to timely file a reply brief. McCrea's Motion for Reconsideration of that ruling was subsequently denied. On March 13, 2019,[5] the Maryland Court of Special Appeals, in case number 1320-2017, denied McCrea's appeal of the Circuit Court's August 11, 2017 Order denying her Emergency Motion to Stay and Dismiss Foreclosure Sale. *See McCrea*, 2019 WL 1200732, at *2. Specifically, the Court held that McCrea's Emergency Motion was untimely and that its vague and conclusory allegations could not establish any meritorious defenses to

---

[5] The Maryland Court of Special Appeals filed an initial Opinion on January 31, 2019. This Opinion is superseded by its subsequent March 13, 2019 opinion. *See McCrea v. Devan*, No. 1320, 2019 WL 410411 (Md. Ct. Spec. App. Jan. 31, 2019); *McCrea v. Devan*, No. 1320, 2019 WL 1200732 (Md. Ct. Spec. App. March 13, 2019).

8

the foreclosure sale under Maryland Rule 14-211. *Id.* at *8. On April 15, 2019 McCrea filed a Petition for Writ of Certiorari to the Maryland Court of Appeals which remains pending.

While these matters were pending in state court, McCrea pressed her claims in this Court. On August 13, 2018, McCrea filed a 98-paragraph Complaint in this Court. McCrea's *pro se* pleading does not enumerate Counts or otherwise organize her allegations under causes of action. Instead, just as in state court, McCrea assembles a collage of legal claims stated without elaboration, as follows:

> Based on the above mentioned actions of Wells Fargo and the Substitute Trustees, the Plaintiff asserts causes of action and/or claims under: Title VI Discrimination; Title VI Retaliation, Fair Housing Act Discrimination; Fraud in the Inducement; Detrimental Reliance; Substantive Unconscionability; Procedural Unconscionability; Misrepresentation under Maryland Consumer Protection Act; Material Omission under Maryland Consumer Protection Act; Common Law Fraudulent Misrepresentation; Reformation of the Mortgage; Material Omission under Maryland Mortgage Fraud Protection Act; Material Misrepresentation under Maryland Mortgage Fraud Protection Act; Violation of Maryland Consumer Debt Collection Act; Violation of Maryland Real Property Article; Common Law Breach of Contract; Misrepresentation under the Fair Debt Collections Practices Act against Wells Fargo; Misrepresentation under the Fair Debt Collections Practices Act against Plaintiffs; Violation of the Equal Credit Opportunity Act; Violation of the Maryland Equal Credit Opportunity Act; Violation of the Truth in Lending Act; Violation of the Real Estate Settlement Procedures Act ("RESPA"). 12 C.F.R. § 1024.41 (Regulation X of RESPA) Violation of Regulation X of the RESPA.

In sum, McCrea lists over twenty common law and statutory causes of action without any explanation of their relevance to her factual allegations. All Defendants have moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

9

R. Civ. P. 8(a)(2). Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The United States Court of Appeals Fourth Circuit has noted that "[w]hile pro se complaints

may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

**ANALYSIS**

Three sets of Defendants have filed a total of four Motions to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Although the arguments in these motions differ to some extent, Defendants generally contend that McCrea's vague allegations do not satisfy federal pleading standards and that, to the extent her claims can be deciphered, they are barred by *res judicata* as a result of litigation in state court. Plaintiff acknowledges that her Complaint contains serious defects. She indicates that "the nature and presentation of [the Defendant's] arguments can only be adequately opposed through amendment of the Complaint" and promises to seek leave of court to file an Amended Complaint. (ECF Nos. 25, at 7; 35, at 8.) She has failed to do so since her last filing on March 15, 2019. As McCrea has failed to adhere to federal pleading standards and appears to assert claims which have already been adjudicated in state court, her Complaint is DISMISSED WITH PREJUDICE.

**I.  The Allegations of the Complaint Fail to State a Claim of Any Kind.**

All Defendants seek dismissal of Plaintiff's Complaint based on her failure to properly plead a cause of action. They lament that the Complaint is "unintelligible," "difficult to decipher," and, with significant understatement, "not the model of clarity." (ECF No. 8-1, at

5, 14; ECF No. 13, at 2.) Although the Complaint invokes roughly two-dozen statutory and common law causes of action, it is in fact entirely premised on McCrea's failure to obtain a modification under the Home Affordable Modification Program, for which there is no private cause of action. To the extent that the Complaint seeks to bring other claims, its allegations do not satisfy federal pleading standards and constitute impermissible "shotgun pleadings." These defects are fatal. Accordingly, the Complaint must be dismissed in its entirety.

### A. Plaintiff's Claims fail because borrowers do not have a right to a loan modification under Home Affordable Modification Program ("HAMP").

Defendants seek dismissal of Plaintiff's claims because they are entirely premised on her unsuccessful attempts to obtain a second loan modification under HAMP. As this Court has previously held, borrowers do not have a right to a HAMP modification. *Amenu-El v. Select Portfolio Services*, RDB-17-2008, 2017 WL 4404428, at *3 (D. Md. Oct. 4, 2017) (citations omitted). Courts "universally reject" claims of entitlement to permanent loan modifications under HAMP because the program "does not create a private cause of action for borrowers against servicers and lenders." *Id.* (quoting *Bourdelais v. JP Morgan Chase*, No. 3:10-CV670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011). Borrowers, however, may assert a breach of contract claim arising from a mortgage servicer or lender's breach of an agreement entered into pursuant to HAMP. *See Letke v. Wells Fargo Home Mortg., Inc.*, RDB-12-3799, 2015 WL 1438196, at *4 (D. Md. March 27, 2015) (noting that borrowers may pursue a breach of contract claim stemming from the breach of a TPP Agreement) (citation omitted).

In this case, Plaintiff acknowledges that she obtained a HAMP loan modification from Wells Fargo and that she rejected its offers to extend a proprietary permanent loan modification. Her only complaint, repeated numerous times, is that Wells Fargo refused to

grant her a second HAMP loan modification and that it made unspecified misrepresentations when it did so. (*See, e.g.*, Compl. ¶¶ 34, 49.) Even if McCrea qualified for a second HAMP loan modification under program guidelines, and even if Wells Fargo wrongfully withheld such modification, McCrea simply cannot sue on this basis. Moreover, although McCrea notes in her Responses that she seeks to enforce "the terms and conditions of her 2010 permanently modified HAMP loan," the Complaint is devoid of any such indication and does not reference a single provision of the loan agreement which she now claims Wells Fargo breached. (ECF No. 23, at 8.) As Plaintiff's claims are entirely premised on Wells Fargo's denial of a second HAMP loan modification, as opposed to the breach of specific terms in a loan agreement, her Complaint must be dismissed.

### B. The Complaint must be dismissed for impermissible "shotgun pleading."

All Defendants seek dismissal based on the Complaint's failure to adhere to federal pleading requirements. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to submit a "short and plain statement of the claim showing that [she] is entitled to relief." Ultimately, the Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Although *pro se* filings are generally afforded charitable construction, they are not absolved from the requirements of Rule 8. *See Adams v. Wells Fargo Bank,* No. 1:09-cv-2387, 2010 WL 3001160, at *3 (D. Md. July 28, 2010) ("The leeway extended to a pro se [p]laintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8."). *Pro se* Complaints marred by "shotgun pleading," which renders impossible any attempt

13

to decipher "which allegations of fact are intended to support which claims for relief" warrant dismissal. *See Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (dismissing *pro se* complaint for engaging in shotgun pleading) (quotations omitted).

Plaintiff's Complaint is a textbook case of impermissible shotgun pleading. McCrea's Complaint presents 85 paragraphs of factual allegations under the heading "Statement of Claim," culminating, without further elaboration, in a list over twenty causes of action. This structure renders futile any attempt to align the Complaint's myriad factual allegations with its roughly two dozen causes of action. The presentation of these allegations also renders fruitless any attempt to discern which Defendants are allegedly responsible for which alleged acts of misconduct or which Defendants are sued under which theory of recovery. This is especially true of Defendants DSDJ Properties and Daniel Wilson, who are alleged only to be "in some way legally responsible and liable for the events referred to herein" and are thereafter rarely mentioned in the Complaint's 29 pages. (*See* Compl. ¶¶ 7-8, 10, 12, 95.) McCrea's responses to the Motions to Dismiss, which includes over 100 pages of state court documents, offer little clarification. She acknowledges the Complaint's deficiencies and promises to seek leave to amend. Yet, despite the elapse of several months since her latest filing, McCrea has not done so.[6] Although this Court recognizes that McCrea is proceeding *pro se*, her Complaint must be dismissed because of its complete failure to adhere to federal pleading standards and her failure to cure these deficiencies.[7]

---

[6] Specifically, McCrea indicated that she would seek leave to amend the Complaint by October 30, 2018. Over seven months have elapsed since that date and she has not submitted an amendment.

[7] Defendants Wells Fargo and the Substitute Trustees have expended considerable time and effort reciting the elements of nearly all of Plaintiff's claims and indicating why the factual allegations of the Complaint fail to support them. This Court need not duplicate these efforts, as any such attempt to unravel McCrea's claims amounts to guesswork.

## II. Plaintiff's Claims are Barred by the Doctrine of *Res Judicata*.

Alternatively, McCrea's claims are barred by the doctrine of *res judicata* because they have already been adjudicated in state court. Federal courts must give state court judgments the same preclusive effect to which they would be entitled under state law. *Proctor v. Wells Fargo Bank*, 289 F. Supp. 3d 676, 682 (D. Md. 2018) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892 (1984)). "In Maryland, *res judicata* bars a party from re-litigating a claim that was decided or could have been decided in an original suit." *Bird v. Specialized Loan Servicing, LLC*, RDB-16-3743, 2017 WL 1001257, at *5 (D. Md. March 15, 2017) (citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). The doctrine applies when "(1) 'the parties in the present litigation are the same or in privity with the parties in the earlier dispute'; (2) 'the claim presented in the current action is identical to the one determined in the prior adjudication'; and (3) 'there has been a final judgment on the merits.'" *Id.* (quoting *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162.

McCrea contends that *res judicata* should not bar her present claims because she "is not challenging the validity of the foreclosure action." (ECF No. 23, at 12.) In essence, this is an argument that her present claims are not the same as those asserted in state court for purposes of *res judicata*. Under Maryland law, the identity of causes of action are evaluated pursuant to the "transaction test," articulated in Section 24 of the Restatement (Second) of Judgments (1982). *Suryan v. CSE Mortgage, LLC*, No. 0452, 2017 WL 3667657, at *14 (Md. Ct. Spec. App. Aug. 25, 2017) (citing *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 495, 525 A.2d 232 (1987)). Under this test, "all rights of the plaintiff to remedies against the defendant are extinguished with respect to all or any part of a transaction, series of connected transactions,

out of which the action arose." *Suryan*, 2017 WL 3667657, at *14 (citing *Rowland v. Harrison*, 320 Md. 223, 230 n.2, 577 A.2d 51 (1990)).

Applying this rule, this Court has prohibited plaintiffs from pursuing claims arising from the same alleged wrongdoings that culminated in a foreclosure ratification. *See, e.g.*, *Kane v. Bayview Loan Sevicing, LLC*, 2018 WL 4333743, at *3 (D. Md. Sept. 10, 2018) (rejecting plaintiff's attempts to re-litigate issues resolved during foreclosure proceedings); *Prudencio v. Capital One*, PWG-16-2693, 2016 WL 6947016, at *3 (D. Md. Nov. 28, 2016) (dismissing state and federal claims because they "could have been raised in the foreclosure action"); *McCreary v. Beneficial Mortg. Co.*, No. AW-11-CV-01674, 2011 WL 4985437, at *4 (D. Md. Oct. 18, 2011) (dismissing claims of fraud, fraudulent misrepresentation, and other state common law claims because "Plaintiff had a fair opportunity to present claims against Defendants during the prior foreclosure proceedings.").

The Circuit Court for Charles County has already resolved the claims McCrea now asserts in this Court. Both McCrea and the Substitute Trustees, acting in privity with Wells Fargo, were parties to the foreclosure proceedings. Her present contention that Wells Fargo improperly denied her a loan modification under HAMP and pursued foreclosure as retaliation for her Consumer Financial Protection Bureau ("CFPB") complaint first appeared in her Emergency Motion before the Circuit Court. That Motion also presented a list of common law and statutory causes of action closely resembling the one found in the operative Complaint. (Substitute Trustees Ex. 2, at ¶ 21.) The Circuit Court for Charles County dismissed these contentions and entered a Ratification Order. The Maryland Court of Special Appeals affirmed. In an unpublished opinion, the Court determined that Plaintiff had failed

16

to advance meritorious defenses to the foreclosure proceedings. Specifically, the Court lamented Plaintiff's decision to present her claims in list-form and without "elaboration or explanation." *McCrea*, 2019 WL 1200732, at *4. As McCrea failed to supply "particular factual grounds" to support her claims, her Emergency Motion presented no basis for imposing a stay of the foreclosure proceeding. *McCrea*, 2019 WL 1200732, at *8. The ratification order entered by the Circuit Court, and affirmed by the Court of Special Appeals, is a final judgment with *res judicata* effect on her present claims.[8]

McCrea contends that *res judicata* does not bar the present action because unidentified fraudulent acts committed by Defendants stymied her efforts to present her claims in state court. Acts of extrinsic fraud or deception can preclude the *res judicata* effect of a ratification order. *See Turner v. JP Morgan Chase*, 2014 WL 4843689, at *8 (D. Md. Sept. 25, 2014) (citing *Ed Jacohsen, Jr. Inc. v. Barrick*, 250 A.2d 646, 648, 252 Md. 507 (1969). Fraud in this context includes "keeping [a litigant] away from court, a false promise of a compromise," or concealing the pendency of a proceeding. *Schwartz v. Merchs. Mortg. Co.*, 309 A.2d 544, 547, 272 Md. 305 (1974).

McCrea makes no allegations of this sort. Although she has repeatedly claimed that Defendants have committed fraud, she has never identified their alleged misrepresentations with any precision or explained how they have presented her from fairly litigating her case. Moreover, her admission that she "actually raised the issue of the HAMP denial in the Foreclosure Action, as set forth in her Emergency Motion" and that she actively litigated her

---

[8] McCrea's pending Petition for Writ of Certiorari does not preclude the application of *res judicata*. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 525, 852 A.2d 1029, 1040 (2004).

claims for months in state court precludes any contention that she was denied a fair opportunity to present her legal claims during the foreclosure proceedings. (ECF No. 35, at 23.)

### III. Dismissal with Prejudice.

Defendants seek dismissal with prejudice. "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009)). While a plaintiff "should generally be given a chance to amend [her] complaint . . . before the action is dismissed with prejudice," *Weigel*, 950 F. Supp. 2d at 825-26 (quoting *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674-76 (S.D. Tex. 2010), dismissal with prejudice is appropriate where amendment would be futile. *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

In this case, McCrea has repeatedly asserted the same meritless claims in both state and federal court. Although she has promised to file an amended Complaint, she has not presented any basis for amendment. Indeed, no amendment can conjure liability against Defendants for their purported failure to properly administer HAMP or save her remaining claims from the effects of *res judicata*. Although McCrea is afforded considerable leeway because she lacks the assistance of counsel, granting her additional leave to amend would not cure the defects associated with her case. Accordingly, the Complaint is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Wells Fargo's Motion to Dismiss the Complaint (ECF No. 8) is GRANTED; DSDJ Properties and Daniel Wilson's Motion to Dismiss Pursuant to

Rule 12(b)(6) for Failure to State a Claim (ECF No. 12) is GRANTED; and the Substitute Trustees' Motions to Dismiss (ECF Nos. 20, 33) are GRANTED.

A separate Order follows.

Dated: June 17, 2019

\_\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge